IN RE ANGEL RIVERA COLÓN, Respondent.

No. 60. Argued December 15, 1944.—Decided March 6, 1945.

Benicio Sánchez Castaño and Dubón & Ochoteco for respondent. R. A. Gómez, Prosecuting Attorney (Fiscal), for The People.

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the court.

The facts which preceded and gave rise to this disbarment proceeding are fully stated in the opinions rendered by this court in civil case No. 8639, "Luis Calderón, etc. v. Manuel Cacho Vega," decided November 24, 1943 (62 P.R.R. 593) and in the disbarment proceeding No. 56, In re Víctor Rivera Colón et al., decided June 1, 1944 (63 P.R.R. 685). A repetition of those facts now would unnecessarily lengthen this opinion. Nevertheless, we think that for a better understanding of the question involved, it is necessary that we should make a brief summary of the facts herein.

Manuel Calderón, a child, of the town of Morovis, was kicked in the forehead by a horse belonging to Manuel Cacho. Thereupon the child's mother entrusted the prosecution of a claim for damages to Attorney Víctor Rivera Colón and his brother, respondent herein, who were associated in the practice of law. On October 28, 1938, said attorneys filed, in the District Court of Arecibo, an action against Manuel Cacho for the recovery of damages in the sum of $5,000.

Afterward, the district court refused leave to discontinue said action which was sought to be dismissed on the ground that another complaint had been filed, in the Municipal Court of Ciales, by the same attorneys, based on the same cause of action, praying for the recovery of $150 as damages sustained by the minor and $50 as fees of the attorneys; whereupon the latter filed in the district court an amended complaint, joining Ignacio Cacho as a party defendant because he was the lessee of the farm involved, and a motion, wherein they alleged that they were convinced that Manuel Cacho Vega was not liable for the accident; that the only person responsible was his son Ignacio Cacho, as lessee of the farm and owner of the horse; and that Ignacio Cacho had offered to settle the suit for the sum of $200. They prayed for approval of the proposed settlement and the court, after examining the child and considering the grave consequences of the injury received by the minor, decided not to approve the compromise in question. The complaint was again amended on January 26, 1939, so as to eliminate therefrom Ignacio Cacho, leaving as the only defendant Manuel Cacho Vega, who was the sole owner of the property and the horse.

The suit which had been commenced on October 28, 1938, was finally tried in August 1941, and judgment was rendered in favor of the minor for $1,300, together with costs and $200 as attorney's fees. On appeal said judgment was reversed and the case remanded to the lower court for a new trial. We will briefly state the reasons we had for such reversal.

Manuel Cacho had set up by way of defense that he did not own or use the horse in question at the time of the accident. In order to prove this, he introduced in evidence a contract of lease of said farm which had been entered into by him and his son since 1937, and which was embodied in a private document drafted by Attorney Angel Rivera Colón. He also introduced certain records of the Agricultural

Adjustment Administration showing that on the basis of said contract of lease, Ignacio Cacho, prior to the accident, had been receiving soil conservation payments in connection with the tobacco which he raised annually on his farm. While Ignacio Cacho was testifying in regard to the lease contract, Attorney Angel Rivera Colón asked him whether or not it was true that in May 1939, he had sworn a complaint before the Justice of the Peace of Morovis regarding the theft of certain yams, in which complaint the witness had stated that the stolen yams belonged to his father Manuel Cacho, whose property was managed by the witness. Ignacio answered that such a statement had been made through error on the part of his brother-in-law, who had drafted the complaint; but that the real fact was that he was the lessee of the farm and the owner of the stolen yams, and that he had so stated before the justice of the peace in the presence of defendant's attorney, respondent herein. After the close of the evidence for the defendant, attorney Angel Rivera Colón offered his own testimony to prove that said contract of lease was a simulated agreement. The court sustained an objection raised by the defendant, and did not allow said attorney to testify regarding communications which were of a privilege character. Since we concluded that the lower court had erred in weighing the evidence and also in rejecting the testimony offered by Rivera Colón, without first investigating whether the latter had acted in his capacity as attorney of the contracting parties or whether his intervention had been confined to serving as a mere instrument in order to put in writing what they said they had agreed upon, we reversed the judgment and ordered a new trial.

In the opinion which we rendered reversing the judgment and ordering a new trial, it was stated that the professional conduct of the attorneys for the minor—which was set forth in detail—seemed to us exceedingly strange, for which reason we ordered the *Fiscal* of this court to make an investigation.

After the latter was carried out, the *Fiscal* filed a complaint praying for the disbarment of Attorneys Angel and Víctor Rivera Colón. A hearing of said complaint was held, and on June 1, 1944, we issued an order censuring both respondents for their conduct in the action brought by the minor Calderón against Manuel Cacho Vega. In the opinion which served as a basis for said order we expressly stated that we refrained from making any pronouncement "as to the part which defendant Angel Rivera Colón may have taken in the preparation of said contract, for if no charge has been preferred against him it would be improper for us to make any pronouncement as to this fact, without giving the defendant an opportunity to be duly notified of the charge and to defend himself"; and, consequently, we ordered the *Fiscal* to file another complaint against Attorney Angel Rivera Colón in connection with any participation which he might have had in the preparation of the alleged simulated contract.

On September 28, 1944, the *Fiscal* filed a complaint against Attorney-Notary Angel Rivera Colón, preferring against him the following charge:

"That in or about the month of June 1937, in the Municipality of Morovis, Puerto Rico, the respondent, acting as attorney-notary in the exercise of his functions as such, participated in, prepared, and drafted an instrument of lease, executed by Manuel Cacho Vega and his wife Dolores Parés Sánchez in favor of their son, Ignacio Cacho Parés, on the following rural property: (here follows the description of the property), said attorney-notary, respondent Ángel Rivera Colón, well knowing that said contract of lease was simulated and was not intended to cover any consideration as between the contracting parties, and that said instrument was executed solely for the purpose of obtaining a quota allowance for the growing of tobacco on the above-mentioned rural property which was the subject matter of said contract of lease."

The respondent answered and admitted all the facts alleged in the complaint, except the allegation that he knew at the time of the execution of the contract that the latter

was simulated. The respondent alleged that he learned for the first time that said contract was simulated on May 12, 1939, when he appeared before the Municipal Court of Ciales as attorney for the defendants in criminal case No. 3939, *People* v. *José Padilla Colón and Joaquín Ortiz,* a prosecution for malicious mischief; that it was during the trial of said case that he learned that the contract was simulated, when he heard the lessee Ignacio Cacho himself testify that he at all times had been nothing more than a manager of the property; that upon learning that the contract was simulated, the respondent, as attorney for the minor Calderón, objected to the defense which had been set up by Manuel Cacho Vega in the action for damages brought against him, said defense being to the effect that at the time of the accident sustained by the minor Calderón, he, Manuel Cacho, did not have the control or management of said property, inasmuch as he had leased it to his son, Ignacio Cacho; and that had the respondent known at the time of the execution of the contract of lease that the same was simulated, he would never have taken any part in the drafting thereof, and on the contrary he would have advised the parties not to execute it, "notwithstanding the fact that no prejudice has been caused to third persons by reason of said execution."

A hearing was held, and the case was finally submitted to us on December 15, 1944.

We will now make a summary, in chronological order. of all the testimony given in regard to the alleged simulated contract before and at the hearing of the proceeding in this court.

During the first trial of the action brought by the minor against Manuel Cacho Vega, the latter testified that he was the owner of the property where the accident occurred; that he had purchased the property from the bank and leased it, by deed, to his son Ignacio in June 1937, for 4 years; that his son paid him an annual rent of $500 and the taxes;

that Ignacio Cacho occupied the property as lessee and not as manager.

José Vélez, an employee of the Triple A, testified that in 1938, he was sent by the Department to assign the tobacco quotas in the wards (*barrios*) of Morovis; that in order to obtain a quota allowance it was necessary to hold a tobacco contract and to be the lessee or owner of a property; that at the time he had to prepare a tobacco contract for Ignacio Cacho, who exhibited to him a contract of lease entered into with Manuel Cacho; that the contract shown to the witness was the same which had been exhibited by Ignacio Cacho and that he recognized it because he had placed thereon a notation dated May 11, 1938, which read thus: "Have examined this instrument presented by Ignacio Cacho in connection with the assignment of a tobacco quota. J. V."

Ignacio Cacho testified that he was engaged in farming on a property which belonged to his father and which the latter had leased to him in 1937, by a written contract executed before Notary Angel Rivera Colón; that ever since that time he had been in possession of the property and would continue to occupy the same until the termination of the lease in 1941; that he and his father had been talking about the leasing of the farm and on that same day, Sunday, upon seeing Attorney Rivera Colón pass by, they entrusted him with the preparation of the contract; that when said attorney returned from Morovis on the same day he brought with him a contract and the witness and his father signed it; that it was true that a criminal complaint had been filed in the Municipal Court of Ciales which he signed, setting forth that the defendant had stolen some goods from the farm of his father, Manuel Cacho; that the complaint had been prepared by Félix Rodríguez and the witness signed it without knowing its contents; that upon hearing the complaint read at the trial he told the judge "that it ought to be made to appear that I was the true owner and that Manuel Cacho

was not''; that he paid a rental of $500 and the taxes, but that the attorney did not care to state that fact in the instrument ''because he said that it was, a transaction between father and son''; that he did not remember whether at the time he signed the complaint on May 1, 1939, the accident involving the injury to the child had already occurred.

The stenographic record of the hearing held by this court in disbarment case No. 56, which record was introduced in the present proceeding as the *Fiscal's* Exhibit No. 2, shows the following testimony given by Ignacio Cacho Parés:

''Q. Who prepared that contract of lease?

''A. Angel Rivera Colón.

''Q. In what form was the lease contract made?

''A. We, my father and I, were at home waiting for him to come up. Then I stopped him and asked him to come in and when he entered my father asked him whether a lease could be made between father and son. He answered, yes, of course, and then went on to explain that a deed cost from $18 to $20 and that an instrument of the kind which he prepared would cost from $6 to $8. Then he took down the data regarding the property, what was to be paid for everything, and then when he returned from Morovis on his way to Ciales he was going to leave the instrument of lease but then he said that he would take it with him in order to seal it; that he took it with him and a few days afterward he returned and stated that he had the instrument with him but that he did not seal it because he had forgotten to send a report to the district and failed to include it in the report. Then he stated that the contract was equally valid whether it bore a seal or not; that it had been prepared by him and his signature appeared there.

''Q. That was what occurred in connection with the instrument. Now I ask you, did you hear Mr. Ángel Rivera Colón testify before the district court that your father and you had told him to prepare said instrument, that it was simulated, and that your father wished you to appear as lessee of that farm in order to obtain allowances from the Triple A, and he stated that said instrument was false and that you had not told him the amounts nor the duration of the lease?

''A. I don't know. We gave him the amount and the term and everything.

"Q. Did you hear him testify that?

"A. He testified it the day we went to Arecibo.

"Q. If he testified it, was it true?

"A. No, sir. We did not tell him anything like that. In order to collect money from the Triple A no instrument of that kind is needed. He stated to the court that it was for the Triple A.

"Q. But if the property belonged to your father, how could he state that?

"A. He stated in court that it was for the purpose of obtaining that.

"Q. How could they assign the quota to you if the property belonged to your father?

"A. He stated it; that it was in order to obtain the allowance.

"Q. Who obtained the allowance of the Triple A, you or your father?

"A. Well, I did because the farm appeared as leased to me, and an inspector went there, and since I was the one who appeared there the allowances belonged to me, and afterward the inspectors of the Triple A testified that I was the true owner."

At the new trial ordered by this court, Attorney Angel Rivera Colón testified before the District Court of Arecibo, in short, as follows:

That in or about the month of June 1937, on a Sunday morning, when I was passing in front of the house of Manuel Cacho, the latter called me and also called his son Ignacio who was then in the house; that in the presence of Ignacio, Manuel Cacho told the witness: "I want you to prepare a contract of lease in which I should appear as leasing the farm to Ignacio"; that thereupon the witness inquired about the stipulations of the contract and Cacho told him that he might put in a reasonable rent and any term he wished because the contract was to be made "for the purpose of obtaining a quota assignment in connection with the growing of tobacco," and added: "I want that quota to be in the name of Ignacio and not in my name because I hold those of Torrecillas and that farm and the quotas have already been assigned, and by leasing the farm to Ignacio I could get a quota in the name of Ignacio"; that the witness

prepared the contract of lease in accordance with those instructions. When asked by counsel of the defendant whether he, the witness, had meant to say that the reason which Manuel Cacho had given for drawing the simulated instrument was to obtain the quota, he answered: "Yes, sir, for tobacco in the name of his son Ignacio, because he already had a quota for his farm." Upon being asked again by the same counsel whether Cacho had told him that the contract was simulated he answered: "He told me that it was for the purpose of obtaining a quota but Ignacio was not going to pay him any rental; that I could put in any rental that I deemed to be reasonable; that I concluded that $500 was sufficient and I put in $500, and unless my memory fails me, I think that I put in four years and that no payment would be made for improvements."

At the hearing of disbarment case No. 56 (Exhibit No. 2 of the *Fiscal*) before this court, respondent Angel Rivera Colón testified regarding the contract of lease, in short, as follows:

That one Sunday he was on his way to Morovis and when passing along the highway in front of the house of Manuel Cacho, the latter and his son called him and told him that they must make a contract regarding the farm; that they gave him a document of the Federal Land Bank in order to copy the description of the farm. That he asked the Cachos: "For how long shall I make it, how much will the rent be?" and they told him to put in any figures that he thought fair, any rental that he considered reasonable, and any other stipulations that he might deem advisable; that he put in a term of 4 years and an annual rental of from $500 to $600. When asked by Mr. Justice Snyder if it had not seemed strange to him that the parties should have permitted him to fix the terms of the contract, he answered: "I told them, why don't you give me the figures? and they said: 'It is a contract to be delivered to

an employee of the Triple A in connection with the assignment of quotas. Make it for a term of over three years' '';
that taking into consideration those facts, the allegations set forth by Ignacio Cacho in the complaint which was filed in 1939, and the incidents of the suit, he reached the conclusion that the contract was simulated. Upon being asked by Mr. Justice Todd, Jr., whether he had stated to the *Fiscal* that the Cachos had told him that ''that contract had not been made in order to enter into a valid agreement between them but that it was a contract made for the purpose of obtaining a tobacco quota from the Triple A,'' he answered that they had in fact so told him. He went on to testify that upon his return from Morovis he delivered the contract to them and he did not know whether they had signed it, inasmuch as he did not see them again until the day of the trial, when they paid him $2 for his work.

In the sworn statement taken before the *Fiscal* of this court on February 28, 1944, the respondent also declared that when he asked the Cachos what would be the term of the lease and the rental, they answered: ''Whatever you think best; it is a matter between father and son''; that he presumed that, since Manuel Cacho owned farms and held quotas, he wanted that quota assigned to his son, as in that way he would receive a larger amount; that in his judgment it was a contract for both of them only, made for that purpose, as they explained to him on that day, ''because I asked them regarding the rental and they told me to put in the amount and the term that I thought best; they gave me ample authority.''

At the hearing of the present proceeding, the respondent gave, in substance, the same testimony as previously given by him before the district court. He insisted that when he drafted the contract he was sure that no fraud would be perpetrated on the Triple A, inasmuch as the quota could be obtained by either the son or the father; that he had no knowledge of the simulation until May 12, 1939, when the

matter of the complaint for the theft of certain yams came up; and that it was then that the firm and well-founded idea that the contract was simulated arose in his mind.

At the second trial of the action of the minor Calderón against Manuel Cacho, the parties submitted the case upon the same evidence introduced at the previous trial, with the exception of the additional testimony given by Angel Rivera Colón regarding the fact of the simulation of the contract, and the testimony of Manuel and Ignacio Cacho which tended to prove the existence and validity of the deed. The District Court of Arecibo, giving full credit to the testimony of Angel Rivera Colón, held "that the contract of lease alleged to exist between Manuel Cacho and his son Ignacio Cacho Parés was a mere simulated formula designed to enable the son to take charge of the property which belonged to the father." The case was again brought to this court and on December 12, 1944, we affirmed the judgment rendered in favor of the minor.

It having been definitely established that the contract drawn up by the respondent was simulated, it only remains for us to decide whether it has been proved by the whole evidence which we have examined that the respondent knew at the time of the drafting of the contract that the latter was not to be signed by the parties as a real and effective obligation but only as a simulated agreement.

From a calm analysis of the evidence as a whole, it is not possible to reach any other conclusion than that the respondent knew that the contract drafted by him was a fictitious agreement. The bare fact that the supposed contracting parties had left to his discretion or caprice the fixing of the term and of the rental, coupled with the knowledge that those provisions lacked importance inasmuch as there was involved a deal between father and son and that the latter was not really going to pay any rent, should have been sufficient to make the respondent realize that he was being used, and

was lending himself, as a man familiar with the law by reason of his status as an attorney, in order to give all the appearances of a legal, true, and existing contract to something which was really nothing more than a sham agreement.

The *Fiscal* admits that it was not necessary for Manuel Cacho to simulate a lease of his farm in favor of his son Ignacio in order to obtain a tobacco quota for said farm; and that Manuel Cacho could have obtained the quota in his own name. Nevertheless, it is inferred from respondent's own testimony, that at the time of the preparation of the simulated contract by the respondent, the father as well as the son thought that the simulation was necessary in order to obtain the quota, and that respondent, with knowledge of those facts, drew up the contract.

Although no fraud has been committed against the Triple A, we are of the opinion that the respondent failed to discharge his professional duty when he lent himself to prepare a contract under the circumstances shown by the evidence. It was his duty to refrain from participating in any way in the scheme which the Cachos had in mind and which they revealed to him when they asked him to draw up the instrument. A simulated contract may turn out to be a harmless instrument, as it happened in this case, but it may be used as an effective means to perpetrate a fraud. An attorney should not, under any circumstances, assist in placing in the hands of an ignorant or wicked person such a dangerous weapon. The mere suspicion that a simulation is involved should be sufficient for an attorney to refrain from participating in the transaction.

The simulated contract drafted by the respondent was not used in order to defraud the Triple A, but it was in fact used by Manuel Cacho seeking to evade the liability which attached to him by reason of the accident on his farm which affected the minor Calderón.

Therefore, it is our duty to censure the respondent for his conduct in drafting said contract.